Billy Jack CRUTSINGER, Appellant,

v.

The STATE of Texas.

No. AP–74769.

Court of Criminal Appeals of Texas.

May 10, 2006.

Rehearing Denied July 26, 2006.

William H. "Bill" Ray, Fort Worth, for Appellant.

Steven W. Conder, Asst. Criminal District Atty., Fort Worth, Matthew Paul, State's Atty., Austin, for State.

## OPINION

HOLCOMB, J., delivered the opinion of the Court, in which KELLER, P.J., and MEYERS, JOHNSON, KEASLER, HERVEY, and COCHRAN, JJ., joined.

In September 2003, a jury convicted appellant of capital murder. TEX. PEN.CODE § 19.03(a). Pursuant to the jury's answers to the special issues set forth in Texas Code of Criminal Procedure Article 37.071, sections 2(b) and 2(e), the trial judge sentenced appellant to death. Art. 37.071, § 2(g).[1] Direct appeal to this Court is automatic. Art. 37.071, § 2(h). Appellant raises five points of error. We affirm.

## VOIR DIRE

■ In his second point of error, appellant claims that the trial court erred by *sua sponte* excusing prospective juror Enlow over appellant's objection that he was not given notice or an opportunity to address the venire person. As authority for this point, appellant cites *Green v. State*, 764 S.W.2d 242 (Tex.Crim.App.1989), *cert. denied*, 507 U.S. 1020, 113 S.Ct. 1819, 123 L.Ed.2d 449 (1993), and *Goodman v. State*, 701 S.W.2d 850, 856 (Tex.Crim.App.1985),[2] which stand for the proposition that "[t]he trial judge should not on its own motion excuse a juror for cause unless the juror is absolutely disqualified from serving as a juror." Appellant's use of this authority is mistaken.

*Green* and *Goodman* discuss the propriety of a trial court granting challenges for cause under Articles 35.16 and 35.19. The trial court in this case, on the other hand, specifically stated that it had excused Enlow under Article 35.03 because she had previously arranged travel plans.

■ This Court has consistently held that Article 35.03 gives a trial court broad discretion to excuse prospective jurors for good reason. *See, e.g., Black v. State*, 26 S.W.3d 895, 899 (Tex.Crim.App.2000)(holding that trial court did not abuse its discretion in *sua sponte* excusing a prospective juror off the record and out of the presence of the attorneys and the appellant because she had a hearing problem). Under Article 35.03, "the court shall ... hear and determine excuses offered for not serving as a juror, and if the court deems the excuse sufficient, the court shall discharge the juror or postpone the juror's service[.]" Unless the excuse given is economic in nature, neither appellant nor his attorney is required to be present. *See* TEX. GOV'T CODE § 62.110(c); *Black*, 26 S.W.3d at 900. The postponement or cancellation of jury service because of a pre-existing scheduling conflict is a legitimate

---

**1.** All references to articles refer to those in the Texas Code of Criminal Procedure.

**2.** *Goodman* was overruled by *Hernandez v. State*, 757 S.W.2d 744, 752 (Tex.Crim.App.

1988), which was in turn overruled by *Fuller v. State*, 829 S.W.2d 191, 200 (Tex.Crim.App. 1992).

exercise of the trial court's discretion under Article 35.03. *See Jones v. State,* 119 S.W.3d 766, 790 (Tex.Crim.App.2003), *cert. denied,* 542 U.S. 905, 124 S.Ct. 2836, 159 L.Ed.2d 270 (2004). Point of error two is overruled.

## LEGALITY OF ARREST AND ADMISSION OF EVIDENCE

Appellant complains in his fourth point of error that the taint of his illegal arrest was not sufficiently attenuated so as to authorize the admission of his confession, DNA sample, and other evidence obtained pursuant to his illegal arrest. A review of the pertinent facts is necessary to address this point.

On April 6, 2003, appellant entered the home of eighty-nine-year-old Pearl Magouirk and her seventy-one-year-old daughter Patricia Syren and stabbed them both to death. Appellant then took items from the house including Syren's Cadillac and credit card. Magouirk's and Syren's bodies were discovered on April 8, 2003. While investigating the crime, officers learned that Syren's credit card was being used in Galveston, Texas. The detectives contacted the Galveston Police Department and traveled to the city to further investigate. The Galveston police determined that the person using the credit card was currently in one of several bars in Galveston. The investigation ultimately led Officer Clemente Garcia to a man later identified as appellant. When Garcia approached appellant and asked him his name, appellant did not initially answer. When Garcia asked appellant for his name

again, appellant told him his name was "David." Garcia arrested appellant for failing to identify himself and read him his *Miranda* rights.[3] After reading appellant his rights, Garcia asked him again for his name, and appellant identified himself as "David Townsend." Garcia took appellant to the Galveston Police Department where he subsequently was able to properly identify him.

While in the holding cell, appellant was introduced to Detective John McCaskill of the Fort Worth Police Department. McCaskill asked appellant if he could see his hands, and appellant obliged.[4] Immediately thereafter, McCaskill left the area where appellant was being held. A few minutes later, appellant said that he had "messed up" and asked to speak to McCaskill. Appellant was then taken to an interview room where McCaskill met with him and again read him his rights. Appellant subsequently consented to having a DNA sample taken from him and to a search of a black duffel bag that had been in his possession when he was arrested. After McCaskill again read appellant his legal warnings and appellant again waived them, appellant confessed in a taperecorded statement to killing the two women in Fort Worth and taking their property. In the confession, appellant told officers where other evidence of the crime could be found.[5]

After a pre-trial hearing on appellant's motion to suppress, the trial court found that appellant had waived his legal rights and had voluntarily signed the consent forms allowing the police to collect DNA evidence and to search his duffel bag. The

---

3. *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966); *see also* Art. 38.22.

4. Blood found at the scene of the crime appeared to belong to the perpetrator, who may

have cut himself when he committed the crime.

5. Appellant does not argue that the giving of his confession or the giving of his consent for the two searches was in any way involuntary.

court also determined that appellant had voluntarily given a recorded statement and was not threatened, coerced, or promised anything.

The court concluded that, although the Galveston police had probable cause to arrest appellant for the offense of credit card abuse, a warrantless arrest was not justified because there was insufficient evidence to show that the defendant was about to escape. The court further concluded that appellant did not commit the offense of failure to identify before he was arrested. Therefore, the police illegally arrested appellant on statutory grounds. *See* TEX. PEN.CODE Ch. 14.

Turning to an attenuation of the taint analysis, the court determined that the short time that passed between appellant's arrest and his confession was not important due to the facts in the case. Specifically, appellant was given his warnings three times before he completed the oral confession. He indicated that he understood his rights each time, but he never invoked them. Significant intervening circumstances were present in the case, including the fact that after his arrest appellant became very emotional, asked to speak to McCaskill, and was very cooperative with the police during the detention and investigation. The court determined that appellant's request to speak to McCaskill was an independent act of free will. The court concluded that: although appellant was illegally arrested, the police conduct was not purposeful or flagrant; probable cause existed for arresting appellant for credit card abuse, therefore his arrest was not a gross violation of the legal process; and appellant's confession was not a product of coercion or duress. Thus, the court concluded that any taint from the illegal arrest was sufficiently attenuated, and the confession and any other evidence

discovered after appellant asked to speak to McCaskill was admissible.

■■■ The trial court was correct in its determinations. Texas Penal Code section 38.02, Failure to Identify, provides in pertinent part:

(a) A person commits an offense if he intentionally refuses to give his name ... to a peace officer who has lawfully arrested the person and requested the information.

(b) A person commits an offense if he intentionally gives a false or fictitious name ... to a peace officer who has:

(1) lawfully arrested the person;

(2) lawfully detained the person[.]

When appellant refused to give Garcia his name, he was not under arrest. Therefore, subsection (a) does not apply. According to the officer's testimony at the suppression hearing, it was after appellant gave him the name of "David" that he decided to detain and arrest him. Under these facts, appellant did not commit the offense of failing to identify himself. Further, the officers provided no evidence at the suppression hearing to justify a warrantless arrest, such as a showing that appellant was about to escape. Thus, the trial court properly determined that appellant was illegally arrested.

The next question is whether the resulting taint on the evidence was attenuated so that the evidence was admissible notwithstanding the illegal arrest. *See Hankins v. State,* 132 S.W.3d 380, 389–90 (Tex. Crim.App.), *cert. denied,* 543 U.S. 944, 125 S.Ct. 358, 160 L.Ed.2d 256 (2004). In assessing whether the taint on the evidence is sufficiently attenuated, the United States Supreme Court has identified the following factors for consideration:

(1) whether *Miranda* warnings were given;

(2) the temporal proximity of the arrest and the confession;

(3) the presence of intervening circumstances; and

(4) the purpose and flagrancy of the official misconduct.

*Brown v. Illinois,* 422 U.S. 590, 598–99, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975).

Appellant was first given his warnings when he was arrested. Appellant was again read his warnings prior to McCaskill's interview. At this time, McCaskill also had him show that he waived his rights by signing a warning form. Finally, appellant again received his legal warnings at the beginning of the tape-recorded statement. Because the record clearly shows that appellant received and waived his legal rights, this factor weighs in favor of admission of the evidence.

With regard to temporal proximity, the testimony shows that less than one hour to an hour and a half elapsed between appellant's arrest and his interview with McCaskill. Arguably, this factor weighs in appellant's favor. However, as the testimony indicated, very shortly after McCaskill stepped out of the holding room, appellant became emotional, stated that he had "messed up," and asked to speak to the detective. Appellant's request was a product of his own free will and an intervening circumstance which weighs heavily in the State's favor.

Finally, the official misconduct was not purposeful or flagrant. The evidence that the police had collected before appellant's arrest showed that he was directly connected to the use of a credit card stolen from one of the Fort Worth victims. Because the police did not observe the illegal use directly, they were required to obtain a warrant in order to arrest appellant for credit card abuse or show a reason why a warrant was not necessary. They did neither. However, the fact remains that the police arguably had enough information to get a warrant based upon probable cause. The fact that Garcia improperly arrested appellant on a different charge, which he thought was correct under the circumstances, does not make the conduct purposeful or flagrant.

Under the facts of this case, the trial court reasonably concluded that any evidence obtained after appellant requested to speak to McCaskill was sufficiently attenuated from the illegal arrest as to be admissible. Appellant's fourth point of error is overruled.

## CONSTITUTIONALITY

■ In his first point of error, appellant asserts that the trial court should have granted his motion to quash the indictment because the death penalty is unconstitutional in that the determination to seek the death penalty is arbitrary and "overridden by the financial situation of individual counties." In essence, appellant argues that there should be a statewide policy or standard for determining in which cases the State will seek the death penalty as opposed to leaving the decision in the hands of the individual district attorneys.

This claim has previously been presented to this Court. In the first two cases, this Court declined to review the merits of the claim because the respective appellants had failed to provide empirical data, case law, or other factual bases that would provide a foundation for such a review. *King v. State,* 953 S.W.2d 266, 274 (Tex. Crim.App.1997); *Bell v. State,* 938 S.W.2d 35, 55 (Tex.Crim.App.1996). Some years later, in *Allen v. State,* 108 S.W.3d 281, 285–87 (Tex.Crim.App.2003), *cert. denied,* 540 U.S. 1185, 124 S.Ct. 1405, 158 L.Ed.2d 90 (2004), the appellant provided tables from the Texas Department of Criminal Justice's website showing the number of

offenders sentenced to death and the number of offenders executed from each county in Texas. He also provided a press release and other newspaper articles indicating the high cost of prosecuting death penalty cases and stating that "[r]ural counties cannot always afford to try a death penalty case." *Id.* at 286. Based upon these documents, the appellant then speculated that "[f]inancial constraints in each of the 254 counties control the decision whether to seek the death penalty." *Id.*

The Court noted in *Allen* that, while the appellant had provided the Court with the number of offenders sentenced to death and the number of offenders executed from each county, he failed to provide budgetary data for each of these counties. *Id.* The Court also noted that one of the articles cited by the appellant stated that an ample budget was only one of several factors that contributed to the higher number of convictions in that county. *Id.* Finally, the Court commented that, "[w]hile larger counties may be in a better financial position to seek the death penalty ... than smaller or poorer counties, it is important to note ... that 'the Capital Litigation section of the Texas Attorney General's office exists especially to aid smaller counties in prosecuting capital cases.'" *Id.* at 286 n. 3. We ultimately overruled the point stating that the appellant had "made no threshold showing of disparate treatment between himself and other similarly situated defendants." *Id.* at 287.

At the hearing on the motion to quash the indictment in the instant case, appellant stated that he had sent open records requests to each of the 254 counties in the state, the Attorney General's Office, and the Texas Comptroller's Office. Of these requests, over 200 counties responded but only about 100 had "useable data." The requests sought the following information

for the years 1999–2003, inclusive: the population of the county, the number of indictments presented in capital cases, the amount of any budget for death penalty cases, the amount of any budget for non-death penalty cases, and any amounts spent in each of those categories. Appellant asked for similar budgetary information from the Attorney General and the Texas Comptroller, as well as the number of cases in which the Attorney General had given assistance. Based upon the requests and the responses, appellant asserts that he has "complied" with the dictates of the *Allen* case and that this Court should review the merits of his claim.

■ Although we pointed out that the appellant failed to provide us with budgetary data in *Allen*, appellant has overestimated the significance of that statement. Because a prosecutor has discretion to seek or not to seek the death penalty in a given case, *Hankins*, 132 S.W.3d at 387; *Cantu v. State*, 842 S.W.2d 667, 692 (Tex. Crim.App.1992); *Gregg v. Georgia*, 428 U.S. 153, 199, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976) (holding prosecutorial discretion not unconstitutional), the amount of resources available, if a factor at all, is only one of numerous factors that may bear upon the exercise of a prosecutor's discretion. The exercise of prosecutorial discretion in an individual case necessarily employs the consideration of various factors including but not limited to: the facts of the case itself, the heinousness of the crime, whether the victim was defenseless, the location of the crime, the callousness of the execution, the particular defendant's history, and the level of the defendant's participation in the offense. We have held that prosecutorial discretion does not violate the Eighth and Fourteenth Amendments. *Hankins*, 132 S.W.3d at 387; *Ladd v. State*, 3 S.W.3d 547, 574 (Tex. Crim.App.1999). Given the broad discretion that a prosecutor possesses when de-

ciding whether to pursue the death penalty, appellant cannot show that the trial court abused its discretion in failing to quash the indictment and declare the death penalty unconstitutional. Appellant's first point of error is overruled.

In his third point of error, appellant asserts that the "10/12" rule of Article 37.071 violates the constitution. This Court has previously considered and rejected this claim, and appellant has given us no reason to reconsider it here. *Escamilla v. State*, 143 S.W.3d 814, 828 (Tex. Crim.App.2004), *cert. denied*, 544 U.S. 950, 125 S.Ct. 1697, 161 L.Ed.2d 528 (2005). Appellant's third point of error is overruled.

In his fifth point of error, appellant claims that the mitigation question submitted to the jury pursuant to Article 37.071, section 2(e), is unconstitutional because the statute does not require the State to prove beyond a reasonable doubt that there was insufficient mitigating evidence to support a life sentence. Appellant relies upon the United States Supreme Court's opinions in *Ring v. Arizona*, 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002), and *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), to support his argument. We have previously rejected this claim, and appellant has given us no reason to revisit the issue here. *See Perry v. State*, 158 S.W.3d 438, 446–47 (Tex.Crim.App.2004), *cert. denied*, —— U.S. ——, 126 S.Ct. 416, 163 L.Ed.2d 317 (2005). Appellant's fifth point of error is overruled.

We affirm the judgment of the trial court.

PRICE and WOMACK, JJ., concurred in the result.