# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 17-70018

United States Court of Appeals
Fifth Circuit

**FILED**

August 3, 2018

Lyle W. Cayce
Clerk

BILLY JACK CRUTSINGER,

Petitioner–Appellant,

versus

LORIE DAVIS, Director,
  Texas Department of Criminal Justice, Correctional Institutions Division,

Respondent–Appellee.

Appeal from the United States District Court
for the Northern District of Texas

Before SMITH, OWEN, and GRAVES, Circuit Judges.[*]

JERRY E. SMITH, Circuit Judge:

Billy Crutsinger is a Texas inmate sentenced to death for capital murder. *See Crutsinger v. State*, 206 S.W.3d 607, 608–09 (Tex. Crim. App. 2006). He requested $500 in funding under 18 U.S.C. § 3599 for a preliminary review of

---

[*] Judge Graves concurs in the judgment only.

No. 17-70018

DNA evidence.  The district court denied the request, deeming the funds not "reasonably necessary" under the statute.  Discerning no abuse of discretion, we affirm.

## I.

The district court ably summarized the relevant facts:

> Crutsinger's crime involved the stabbing deaths of 89-year-old Pearl Magourik and her 71-year-old daughter, Patricia Syren, in their Fort Worth home.  Both victims suffered multiple stab wounds and had their throats cut.  A broken knife was found in the victims' bathroom, and blood evidence suggested the killer had been injured when it broke. Syren's Cadillac was taken from the home and later found abandoned at a bar.  A DNA analyst testified at trial about biological samples taken from the broken knife, the victims' clothing, the interior of the abandoned Cadillac, men's clothing found in a trash dumpster near the abandoned Cadillac, and blood stains throughout the victims' home and garage.  The analyst associated some samples with either Crutsinger or the victims, but she also identified "mixture" samples containing DNA associated with both Crutsinger and one or both victims.

Crutsinger sought and was denied relief on direct appeal and in state and federal habeas corpus proceedings.[1]

In April 2017, Crutsinger filed a motion for funding under § 3599. Attached was a letter from the district attorney's office explaining that Crutsinger's case "*may potentially* be impacted" by a change in the DNA-mixture interpretation protocol and the FBI's "recent amendment of its population database."  The letter included a lab review identifying two samples affected by the protocol, both found in the dumpster by Crutsinger's motel: a stain on the pocket of a denim shirt, which initial testing suggested was a mixture of the victims' DNA, and a stain on the pocket of denim shorts, which testing

---

[1] *See Crutsinger v. Stephens*, 576 F. App'x 422, 422 (5th Cir. 2014) (denying request for a certificate of appealability and summarizing earlier proceedings), *abrogated by Ayestas v. Davis*, 138 S. Ct. 1080, 1093−94 (2018).

showed was a mixture of the victims' and Crutsinger's DNA.[2]

The motion also appended a second letter from the district attorney explaining it was unable to obtain a reinterpretation of these DNA-mixture profiles because the medical examiner's office was no longer proficiency-tested for the relevant protocols. The district attorney's office clarified that it would "seek[] an execution date" for Crutsinger regardless, because "significant DNA evidence not impacted by the changed mixture interpretation protocol [and significant non-DNA evidence] inculpates" him.

In his motion, Crutsinger requested $500 so that "Bode Cellmark, a Lab-Corp Specialty Testing Group . . . [can] conduct an initial review and screening of the bench notes/data underlying the State's . . . letter concerning . . . the DNA mixture profiles" from the test areas in question, and Crutsinger advised that he might seek additional funding to perform the actual testing. He claimed generally that the "request is reasonably necessary for investigating issues related to [his] guilt, and is relevant to his representation in executive clemency and in potential applications for a writ of habeas corpus"; yet he failed to explain, with even the slightest degree of specificity, how further review and testing of the relevant DNA profiles might improve the prospect of either kind of relief.

The district court denied the motion on the alternative grounds that (1) the DNA review fell outside of the scope of § 3599 and (2) the requested services were not reasonably necessary for Crutsinger's representation, as he had failed to "identify a viable constitutional claim that the DNA expert would be used to develop" or how it might support that claim. On the latter point,

---

[2] Crutsinger adds that the state identified a "sample from Syren's shorts from which Crutsinger could not be excluded," which bore a "deficiency" "related to a random match probability calculation."

No. 17-70018

the court noted that "the absence of a DNA expert does not prevent Crutsinger from claiming he is factually innocent[,] [n]or does it prevent him from articulating how his exclusion from a DNA sample could demonstrate his actual innocence." The court was careful to explain that it was "not requiring Crutsinger to show a 'substantial need' for the requested DNA services," but Crutsinger had failed to identify a viable claim or even "discuss the evidence that would be subjected to the new protocol." The court thus rejected his "request to fund a fishing expedition." Crutsinger appeals.

## II.

"We review the denial of funding for investigative or expert assistance for an abuse of discretion."[3] Section 3599(a) authorizes federal funding for petitioners who face the prospect of death and are "financially unable to obtain adequate representation or investigative, expert, or other reasonably necessary services." To merit funding, expert and investigative services, such as the kind requested here, must be "reasonably necessary for the representation of the [applicant]." § 3599(f).

As noted above, the district court held that Crutsinger's motion failed to show reasonable necessity because it identified no constitutional claim the additional funding might conceivably support, nor did it explain how the results of review and further DNA testing might advance such a claim.[4]

That assessment coheres neatly with the Supreme Court's most recent pronouncements in *Ayestas*. The Court explained that "[a] natural

---

[3] *Wilkins v. Davis*, 832 F.3d 547, 551 (5th Cir. 2016) (quoting *Brown v. Stephens*, 762 F.3d 454, 459 (5th Cir. 2014)); *Ayestas*, 138 S. Ct. at 1094 ("[D]istrict courts have broad discretion in assessing requests for funding.").

[4] Because we agree that Crutsinger failed to show the funding was reasonably necessary, we need not address the district court's alternative holding that the requested review falls outside of the scope of § 3599.

No. 17-70018

consideration informing the exercise of [the district court's] discretion [under § 3599] is the likelihood that the contemplated services will help the applicant win relief" and that "[p]roper application of the 'reasonably necessary' standard . . . requires courts to consider the potential merit of the claims that the applicant wants to pursue." *Ayestas*, 138 S. Ct. at 1094. Though the Court was careful to add that "a funding applicant must not be expected to prove that he will be able to win relief," it emphasized that the touchstone of the inquiry is "the likely *utility* of the services requested" and that "§ 3599(f) cannot be read to guarantee that an applicant will have enough money to turn over every stone." *Id.* (emphasis added). Even the petitioner in *Ayestas* conceded that "an applicant must 'articulat[e] specific reasons why the services are warranted'— which includes demonstrating that the underlying claim is at least 'plausible.'" *Id.*[5]

Crutsinger resists *Ayestas* on three bases, none persuasive. First, he suggests § 3599(f) "does not require [that he] identify a viable constitutional claim" and that *Ayestas* is distinguishable because it was "about authorization of auxiliary services in a habeas corpus proceeding in which the habeas petition had already been filed." That distinction is unpersuasive. *Ayestas* offers general guidance on the meaning of "reasonable necessity," with the touchstone being the "utility" of the service to prospects of eventual relief. That Crutsinger "does not have a pending habeas corpus petition" does not relieve him of the burden to explain how funding might conceivably advance his position. And of course, that burden demands more than a gesture toward the state's abundance of caution.

---

[5] *Accord United States* v. *Hamlet*, 480 F.2d 556, 557 (5th Cir. 1973) (per curiam) (upholding trial court's refusal to fund psychiatric services based on the conclusion that "the request for psychiatric services was . . . lacking in merit" because there was "no serious possibility that appellant was legally insane at any time pertinent to the crimes committed").

No. 17-70018

Alternatively, Crutsinger claims that, "because the development is foren-sic," the lawyer "is in no position to posit what constitutional claims, if any, may flow from it." The implied suggestion is that lawyers lack the necessary imagination and forethought to opine plausibly on how the DNA evidence might be relevant to Crutsinger's case. The district court rightly dismissed that view as facially untrue. Lawyers are well positioned to forecast the poten-tial *legal* relevance of further review and forensic investigation.

Finally, Crutsinger claims his lawyer must fully "understand the facts of his case—including how subsequent changes in forensic science relevant to his case may impact it—before asking the executive to grant him clemency." But petitioners cannot invoke clemency to end-run *Ayestas*'s emphasis on the "utility" of further investigation and expert involvement. *See Ayestas*, 138 S. Ct. at 1094. Doing so would directly thwart *Ayestas*'s admonition against "fishing expedition[s]." *See id.* (quoting *United States v. Alden*, 767 F.2d 314, 319 (7th Cir. 1984)).

Neither in the district court nor in his briefing on appeal does Crutsinger explain how further review and DNA testing could conceivably support claims for relief or a case for clemency. The district court was thus well within its discretion to deny funding.

AFFIRMED.