# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 20-70002

United States Court of Appeals
Fifth Circuit

**FILED**
March 16, 2020

Lyle W. Cayce
Clerk

JOHN HUMMEL,

      Petitioner - Appellant

v.

LORIE DAVIS, DIRECTOR, TEXAS DEPARTMENT OF CRIMINAL
JUSTICE, CORRECTIONAL INSTITUTIONS DIVISION,

      Respondent - Appellee

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 4:16-CV-133

Before HIGGINBOTHAM, JONES, and COSTA, Circuit Judges.

PER CURIAM:*

In December 2009, John Hummel murdered his pregnant wife, Joy Hummel; his daughter, Jodi Hummel; and his father-in-law, Clyde Bedford.[1] Sentenced to death in 2011, his execution date was set on November 19, 2019, for March 18, 2020. On February 3, 2020, with his direct appeal and habeas

---

  * Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

  [1] *Hummel v. State*, 2013 WL 6123283, at *1–4 (Tex. Crim. App. Nov. 20, 2013) (detailing the facts of Hummel's crimes).

No. 20-70002

proceedings exhausted, he sought $20,000 in funding under 18 U.S.C. § 3599(f) to secure two experts to bolster his petition for clemency. He appeals the district court's partial grant of federal funding for his state clemency proceedings and seeks a stay of execution should our appeal remain pending by March 18. He also files an "Emergency Supplement to the Motion for a Stay of Execution," which is best understood as an additional stay motion related to administrative difficulties caused by the COVID-19 virus.

## I.

A court can authorize funding for "investigative, expert, or other services" that are "reasonably necessary for the representation of the defendant, whether in connection with issues relating to guilt or the sentence."[2] Such fees "shall not exceed $7,500 in any case, unless payment in excess of that limit is certified by the court . . . and the amount of the excess payment is approved by the chief judge of the circuit."[3] We review a denial of a funding motion under a highly deferential abuse of discretion standard.[4] "A natural consideration informing the exercise of that discretion is the likelihood that the contemplated services will help the applicant win relief."[5] "Proper application of the 'reasonably necessary' standard thus requires courts to consider the potential merit of the claims that the applicant wants to pursue, the likelihood that the services will generate useful and admissible evidence, and the prospect that the applicant will be able to clear any procedural hurdles standing in the way."[6]

## II.

The first of Hummel's requested experts, Dr. William Brown, prepared a

---

[2] 18 U.S.C. §3599(f).
[3] *Id.* § 3599(g)(2).
[4] *Crutsinger v. Davis*, 898 F.3d 584, 586 (5th Cir. 2018).
[5] *Ayestas v. Davis*, 138 S.Ct. 1080, 1092 (2018).
[6] *Id.*

No. 20-70002

sociological report on the influence of the Military Total Institution ("MTI") on Hummel's behavior. This report was submitted to the Texas Board of Pardons and Paroles after the district court found the $4,000 sought for his services "reasonably necessary."

The second requested expert, Dr. Robert Stanulis, is a forensic psychologist and neuropsychologist who would perform a risk assessment of Hummel. Hummel hopes to use Stanulis's work to press the idea that he does not pose a future danger. Hummel sought $16,000 to pay Stanulis, but the district court found Hummel had not adequately explained how Stanulis's testimony would differ from that of Hummel's trial expert, Dr. Antoinette McGarrahan, or whether a local expert who did not require four days of travel expenses was available. Further, the district court viewed this potential evidence as "double-edged." It tended to establish that Hummel, for his PTSD and as a product of MTI, poses a greater risk than would a murderer suffering from the personality disorders the trial expert McGarrahan identified as potential explanations for Hummel's conduct.

In an order entered without prejudice, the district court denied any monies beyond the statutory cap of $7,500 to hire Brown "and a qualified mental health expert of [Hummel's] choosing[,]" explaining that the issue "is not the reasonableness of the proposed mental health services per se; it is rather whether the services of a highly compensated out-of-state expert are reasonably necessary to perform the type of limited-scope risk assessment [Hummel] identifies."

Hummel moved for reconsideration, asserting that he could not find a qualified local expert as the possible candidates have left the state and would offer no cost savings as compared to Stanulis. Hummel urged that Stanulis could perform a narrower version of the risk assessment in fewer hours and could thus incur fewer costs. But in the district court's view, this "new price

3

No. 20-70002

tag . . . appears to be within the range of funding previously granted"—meaning the $3,500 portion of the $7,500 award reserved for mental-health services. The court listed several defects in Hummel's motion, including the lack of a specific updated sum needed to complete the requested testing[7] and the uncertain nature of what a "risk assessment entails." Like the original motion, the reconsideration motion was denied without prejudice.

## III.

The State first argues that we lack jurisdiction over this appeal as it seeks review of an order that is not final; that both denials were without prejudice and noted unanswered questions for Hummel to address in subsequent petitions. The State further argues that the appeal is moot because Hummel has already filed his clemency petition, which was due February 26 with supplementation due March 3. The Texas Administrative Code requires that "[a]ll supplemental information not filed with the application . . . must be submitted . . . not later than the fifteenth calendar day before the execution is scheduled."[8]

We find that the order appealed from, viewed in the context of the ultimate imminent finality of death, was final. That the district court framed its ruling as without prejudice here was no more than an unwillingness to foreclose correction of any error in its ruling given the reality of the imminent execution and that appellate review was in fact Hummel's only remaining recourse. We do not trifle with the core strictures of this court's power. Rather we today apply the rules of finality with an open not a blind eye. We need not and do not engage the issues of exhaustion and the State Administrative Code

---

[7] In his brief before this panel, Hummel somewhat clarifies his new requested sum. Stanulis will need 20–24 fewer hours than originally requested, so he needs a total of $10,000–11,000, or $6,500–7,500 in excess of the allotted $3,500.

[8] TEX. ADMIN CODE § 143.57 (Commutation of Death Sentence to Lesser Penalty); *id.* § 143.43 (Procedure in Capital Reprieve Cases).

No. 20-70002

as we find Hummel's assertions of error in the district court's award of funding wholly without merit.

**IV.**

The district court engaged with Hummel three times: in a show-cause order issued shortly after Hummel filed his motion, in the order denying the motion, and in the order denying the motion for reconsideration. All three reasoned writings noted various deficiencies and unanswered questions in Hummel's requests. Ultimately, the district court granted funding equal to the statutory cap but declined to exceed it.

The district court reasoned that, at trial, Hummel used two experts as part of his mitigation case. One opined that Hummel would receive a relatively lax prison security level. The second, a forensic psychologist, did a full neuropsychological, personality, and emotional evaluation that used the gamut of available documents and interviews. This expert, Dr. McGarrahan, opined that Hummel's crimes came "in a flood of emotional rage" caused by a lifetime of repressed emotions, even though Hummel knew the decision to kill was wrong. She concluded that Hummel had no severe mental disorder but may suffer from several personality disorders. Thus, the district court concluded that Hummel's military record was on full display at trial, as were expert opinions assessing the effect of that service—and of Hummel's other experiences and tendencies—on Hummel's behavior.

Hummel argues McGarrahan's trial testimony "was based entirely on a clinical assessment and did not utilize risk-assessment tools." A risk assessment is especially valuable, he argues, because of Hummel's "exemplary" behavior since his 2009 arrest and his lack of violent history before the crime. It may be that Brown and Stanulis, both of whom are familiar with veterans and capital cases, make a "unique team" with interlacing strengths—Brown is alleged to be the only known MTI expert but cannot make diagnoses, for

5

## No. 20-70002

example, while Stanulis can. But a showing that two experts complement one another is not a showing that their services are reasonably necessary. Given the broad deference afforded the district court, especially given the effect of the statutory cap and the additional steps required of a district judge who wishes to exceed it, we find no abuse of discretion.

## V.

Finally, on March 13, Hummel filed an "Emergency Supplement to the Motion for a Stay of Execution." He contends his execution should be stayed because of COVID-19's effect on the courts and his execution. Hummel acknowledges that this motion violates the rule that all such stay requests must be filed at least seven days before the scheduled execution date.[9] In this case the extent of COVID-19's effect on commerce and daily life was not as clear on March 11, seven days before Hummel's execution date. This situation has evolved rapidly. But we need not address the effect of the rule on this case, as Hummel identifies no roadblock to his execution warranting a stay from this Court.

Hummel speculates that an expected visitor may be unable to visit him, that disruption to various tribunals (like this Court or the Governor's office and the Board of Pardons and Paroles) may deprive him of adequate review, and that absences among the State's execution staff may cause problems. These ills are speculative, and we will not stay the execution based on what might happen. For our part, the virus has not prevented our review of Hummel's appeal. We note also that this stay request is freestanding—it is not tied to any appeal that we would ultimately need to resolve. Construing Hummel's supplement as an additional motion for a stay of execution, that motion is denied.

---

[9] *See* TEX. CT. CRIM. APP. MISC. R. 11–003.

No. 20-70002

## VI.

The judgment of the district court is affirmed and the petitions for stay of execution are denied.