

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

## NO. PD-0154-09

**ABELINO MONGE, Appellant**

**v.**

**THE STATE OF TEXAS**

### ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW
### FROM THE FOURTEENTH COURT OF APPEALS
### HARRIS COUNTY

**JOHNSON, J., delivered the opinion for a unanimous Court.**

## O P I N I O N

After appellant's motion to suppress his confession was denied, appellant plead guilty to capital murder. The trial court convicted him of that offense and assessed punishment at life in prison.

On appeal, appellant contended that the trial court erred in denying his motion to suppress the confession, which he alleged had been tainted by his unlawful arrest. *Monge v. State*, 276 S.W.3d 180, 183 (Tex. App.—Houston [14th] 2009). The court of appeals weighed the four *Brown* factors to determine whether the taint of the unlawful arrest had been attenuated. *Id.* at 184-85. It held that

the *Brown* factors weighed in favor of the state and affirmed the trial court's judgment. *Id.* at 190.

We granted review of the sole ground for review raised in appellant's petition for discretionary review.

> Did the Court of Appeals err in holding that the prosecution discharged its affirmative burden of establishing that the appellant's confession was not the product of his illegal arrest and detention and, therefore, was admissible against him, by concluding that the act of police interrogators in confronting the appellant with the inculpatory admissions of an alleged co-defendant prior to eliciting appellant's confession, constituted an adequate "intervening event" which supposedly broke the causal chain between his illegal arrest and detention rendering his confession "a product of a free will," notwithstanding the fact, that the record irrefutably demonstrates that the appellant was arrested illegally, without the benefit of a warrant issued by a neutral and detached magistrate, in violation of Chapter 14 of the Code of Criminal Procedure, was thereafter interrogated while illegally detained, was, at all times during his 22 hours at the homicide division, in the presence and under the control of the police, was never taken to a magistrate, never spoke with a lawyer and was mislead by the interrogators about what he was actually being charged with?

We affirm appellant's conviction for capital murder.

**Facts**

The record reflects that on July 14th a detective discovered a cell phone near the scene of a murder which had occurred two days earlier. The phone belonged to appellant and had been used to call and receive calls from the victim. It also had been used to call a third person, Margil Ochoa.

Detectives wearing plain clothes located appellant at his workplace on July 21st at 10:30 a.m. They invited appellant to accompany them to their office at the police station to answer some questions about the phone. Appellant advised the detectives that his phone had been stolen and agreed to accompany them. The detectives offered to give appellant a ride because appellant's car was in the shop. Appellant accepted the offer, was not handcuffed, and he rode in the front passenger seat of an unmarked police vehicle.

Appellant arrived at the station at 11:15 a.m. and was escorted to an interview room, where he was questioned. At 1:00 p.m., the detectives asked appellant for a DNA sample, and he agreed to provide one. The detectives advised appellant that he had not been charged with a crime and was free to leave.

Over the course of the afternoon appellant was provided with a chicken lunch and a smoke break. The detective also requested permission to search appellant's car and home and that appellant take a polygraph test. Appellant agreed to all the requests and failed the polygraph test. Appellant maintained his innocence, and questioning ended for the day at 6:10 p.m. Although free to leave, appellant instead went to sleep in the interview room.

Meanwhile, detectives had found Ochoa, the other man whose name was associated with the cell phone, and were questioning him in another room. Sometime between midnight and 4:13 a.m., Ochoa admitted that both he and appellant had been involved in the victim's murder and named appellant as the shooter.

At 7:00 a.m., a detective informed appellant that he was under arrest, placed him in handcuffs, and began working on the paperwork concerning appellant's arrest. A detective read appellant the *Miranda* rights at 8:44 a.m. and confronted him with Ochoa's confession. Appellant then confessed his involvement in the crime.

Before trial, appellant filed a motion to suppress his confession, contending that he was unlawfully arrested, that his subsequent confession was tainted under the doctrine of the "fruit of the poisonous tree," and that the state did not prove attenuation of the taint.

The trial court found that appellant's arrest was unlawful because the police officers failed to obtain an arrest warrant. *Id.* at 183. However, the court denied appellant's motion to suppress

because it also found that the taint of appellant's warrantless arrest had been attenuated. *Id.* Appellant subsequently plead guilty to capital murder and was sentenced to life in prison.

## Arguments of the Parties

Appellant contends that the *Brown* factors do not weigh in favor of finding that the taint of the illegal arrest was attenuated. In particular, appellant argues that the confession of a co-defendant does not satisfy the "intervening event" factor and that the remaining factors are not sufficient to justify a holding that the taint was attenuated.

The state concedes that the arrest was illegal, but contends that the *Brown* factors weigh in favor of finding that the taint of the illegal arrest was attenuated and that the confession of a co-defendant is an "intervening event."

## Analysis

## The Four Factor Test

The court of appeals provides a concise and accurate introduction to the law pertinent to this case.

> The "fruit of the poisonous tree" doctrine generally precludes the use of evidence, both direct and indirect, obtained following an illegal arrest. *See Wong Sun v. United States*, 371 U.S. 471, 484, 83 S. Ct. 407, 9 L. Ed. 2d 441 (1963); *State v. Iduarte*, 268 S.W.3d 544, 550 (Tex. Crim. App. 2008). Here, the State does not challenge the illegality of appellant's warrantless arrest, which did not fit within any of the recognized exceptions to the warrant requirement. Instead, the State contends the nexus between the unlawful arrest and appellant's confession was so attenuated as to dissipate the taint of the prior illegality. *See Wong Sun*, 371 U.S. at 487-88. [holding omitted]
>
> Evidence that is sufficiently attenuated from the unlawful arrest is not considered to have been obtained therefrom. *See Sims v. State*, 84 S.W.3d 805, 810 (Tex. App.--Houston [1st Dist.] 2002, no pet.). The prosecution carries the burden of proving attenuation. *See Brown v. Illinois*, 422 U.S. 590, 604, 95 S. Ct. 2254, 45 L. Ed. 2d 416 (1975); *Garcia v. State*, 3 S.W.3d 227, 242 (Tex. App.--Houston [14th Dist.] 1999), *aff'd*, 43 S.W.3d 527 (Tex. Crim. App. 2001). In deciding whether

appellant's confession, which was given following an illegal arrest, was sufficiently attenuated as to permit the use of the confession at trial, we are to consider the following factors:

(1) whether *Miranda* warnings were given;
(2) the temporal proximity of the arrest and the confession;
(3) the presence of intervening circumstances; and
(4) the purpose and flagrancy of the official misconduct.

See *Brown*, 422 U.S. at 603-04; *Bell v. State*, 724 S.W.2d 780, 788 (Tex. Crim. App. 1986); *Weems*, 167 S.W.3d at 359. These four factors do not necessarily carry equal weight. *See Bell*, 724 S.W.2d at 788-90 (generally describing the relative importance of each factor); *Self v. State*, 709 S.W.2d 662, 668 (Tex. Crim. App. 1986).

*Monge v. State*, 276 S.W.3d 180, 184-85 (Tex. App.—Houston [14th] 2009).

No single factor is decisive. We examine each factor in turn and then consider the effect of the factors as a whole.

### *Miranda* Warnings

*Miranda* warnings are an important and necessary factor in determining whether the confession is obtained by exploitation of an illegal arrest. *Brown*, 422 U.S. at 603. However, the fact that a *Miranda* warning has been given is not sufficient to break the causal connection between an illegal arrest and the confession. *Id.*

In this case, a *Miranda* warning was given to appellant before his confession, thus the first *Brown* factor weighs in favor of the state.

### The Temporal Proximity of the Arrest

Temporal proximity is generally not a strong determining factor. *Bell,* 724 S.W.2d at 788. Nevertheless, if there is a short period of time (under three hours) between the illegal arrest and the confession, this factor will weigh in favor of appellant. *Id.*

In this case, appellant was illegally arrested at the time he was implicated by Ochoa, was informed of his arrest at 7:00 a.m., and gave his confession approximately two hours later at 8:44

a.m. The short period of time between his illegal arrest and confession weighs in favor of appellant.

## The Presence of Intervening Circumstances

The presence of an intervening circumstance is an important factor. Generally, "[a] confession obtained through custodial interrogation after an illegal arrest should be excluded unless intervening events break the causal connection between the illegal arrest and the confession so that the confession is sufficiently an act of free will to purge the primary taint." *Townsley v. State*, 652 S.W.2d 791, 796-97 (Tex. Crim. App. 1983). However, the lack of intervening circumstances is not dispositive if other *Brown* factors weigh strongly in favor of the state. *Self*, 709 S.W.2d at 668.

Confrontation with significant evidence untainted by an illegal arrest may be an intervening circumstance if it breaks the causal connection between the arrest and the confession. *See Dowthitt v. State*, 931 S.W.2d 244, 262 (Tex. Crim. App. 1996). However, in a particularly coercive atmosphere, such confrontation will not be sufficient to break the causal connection between an arrest and the confession. *See Gregg v. State*, 667 S.W.2d 125, 129 (Tex. Crim. App. 1984).

In *Dowthitt*, the police were investigating a capital-murder case. Dowthitt voluntarily went to the police station to give a statement. *Dowthitt,* 931 S.W.2d at 252. Over the course of 16 hours, Dowthitt took a polygraph test and was interrogated. *Id.* at 252-54. While being interrogated, he made statements that suggested that he had been at the scene of the crime. *Id.* at 253. He was then arrested without a warrant. *Id.* at 262. The interrogation continued, and Dowthitt made a confession, which he sought to suppress at trial. *Id.*

We held that the taint of the illegal arrest was sufficiently attenuated, noting that Dowthitt's "custodial statements appeared to flow as much from [his] precustodial admission to being present at the murders as from his custody status." *Id.*

By contrast, in *Gregg*, this court was unconvinced that Gregg's reading of a co-defendant's admission constituted a sufficient intervening circumstance to attenuate the taint of the arrest. *Gregg*, 667 S.W.2d at 129. In that case, the arrest was tainted by significant police misconduct; Gregg was unaware of what he was being investigated for before he read his co-defendant's confession, and the interrogation was coercive and intimidating. *Id.*

The present case is a close one, but it is more similar to *Dowthitt*. Appellant voluntarily went to the police station and submitted to a lengthy interrogation even though he was told that he was free to leave. After Ochoa gave a statement that implicated appellant in the murder, police officers had probable cause to believe that appellant was involved in the murder, but they did not obtain a warrant before they arrested appellant. A distinction is that, instead of confessing after being confronted with his own earlier statements, appellant confessed immediately after being confronted with a confession by Ochoa that was untainted by appellant's illegal arrest. Appellant's subsequent confession flowed at least as much from being confronted with his co-defendant's untainted confession as from his arrest. In such circumstances, we hold that confrontation with Ochoa's confession was an intervening circumstance that weighs in favor of the state in this case.

### Purpose and Flagrancy of Official Misconduct

Purpose and flagrancy of official misconduct "is one of the most important factors to be considered." *Bell*, 724 S.W.2d at 789. When official misconduct is the most flagrantly abusive, the standard for the state to prove attenuation is elevated to require the "clearest indications of attenuation." *Id.* at 789. Examples of such abusive conduct may include "reliance on factors in making an arrest which were so lacking in indicia of probable cause as to render belief in its existence entirely unreasonable; an arrest effectuated as a pretext for collateral objectives; or an

arrest which is unnecessarily intrusive on personal privacy." *Id.* Similarly, the taint may not be attenuated if the accused was arrested for no apparent justification and with the sole intent to extract a confession by exploitation. *See id.* at 789-90. This contrasts with situations in which probable cause exists and failure to get an arrest warrant is a comparatively less serious misconduct. *Id.* at 790.

As in all attenuation cases, there was official misconduct, specifically, failing to obtain a warrant before the arrest. However, none of the *Bell* examples of abusive conduct occurred in this case. Based on Ochoa's confession, the discovery of appellant's phone at the crime scene, and appellant's failing of a polygraph test, the detectives had probable cause to arrest appellant. Furthermore, the detective in charge testified that he chose not to procure a warrant because he misunderstood TEX. CODE CRIM. PROC. art. 14.03(a)(6) to mean that a warrant was unnecessary in the situation.

Appellant contends that police misconduct is further demonstrated by the fact that he was in the control of law enforcement for over 22 hours and received only one meal during that period. Additionally, appellant claims that the detectives mislead him by telling him he was being charged with "murder" instead of "capital murder."

Neither of those contentions have merit. The record reflects that appellant went to the station voluntarily and cooperated with police up until he was arrested approximately two hours before his confession on July 22; he was not held against his will for an extraordinary or coercive length of time. Furthermore, there is evidence that the detectives were civil and non-coercive while appellant was at the station and not in custody. The detectives gave appellant a ride to the station when told his car was in the shop, he rode in the front of the patrol car, they provided a lunch, they took smoke

breaks with him, they provided a blanket when appellant got cold, and they maintained a sympathetic and non-coercive atmosphere even after the arrest.

Appellant appears to argue that the police telling appellant that he was being charged only with murder, instead of capital murder, was an improper inducement under TEX. CODE CRIM. PROC. art. 38.21. However, "[f]or a promise to render a confession invalid under Article 38.21, it must be (1) positive, (2) made or sanctioned by someone in authority, and (3) of such an influential nature that it would cause a defendant to speak untruthfully." *Henderson v. State*, 962 S.W.2d 544, 564 (Tex. Crim. App. 1997). In this case, there is no evidence in the record that any promise was made or that the specific nature of the alleged promise had any impact on appellant's decision to confess. To the contrary, the detective's statement seems to be an attempt to convey the gravity of the charge in ordinary, if legally imprecise, terms.

We therefore conclude that the fourth *Brown* factor weighs in favor of the state.

## Conclusion

Three of the four *Brown* factors weigh in favor of the state. Weighing the factors together, we are satisfied that the confession in this case was sufficiently attenuated from the taint of the illegal arrest. We affirm the judgment of the court of appeals.


Delivered: June 30, 2010
Publish