ACCEPTED
01-15-00074-CR
FIRST COURT OF APPEALS
HOUSTON, TEXAS
10/30/2015 4:33:03 PM
CHRISTOPHER PRINE
CLERK

## No. 01-15-00074-CR

In the
Court of Appeals
For the
First District of Texas
At Houston

FILED IN
1st COURT OF APPEALS
HOUSTON, TEXAS
10/30/2015 4:33:03 PM
CHRISTOPHER A. PRINE
Clerk

————————◆————————

## No. 1256403

In the 337th District Court
Of Harris County, Texas

————————◆————————

## Judist Lamond Broussard

*Appellant*

*v.*

## The State of Texas

*Appellee*

————————◆————————

State's Appellate Brief

————————◆————————

**Clinton A. Morgan**
Assistant District Attorney
Harris County, Texas
State Bar No. 24071454
morgan_clinton@dao.hctx.net

1201 Franklin St., Suite 600
Houston, Texas 77002
Telephone: 713.274.5826

**Devon Anderson**
District Attorney
Harris County, Texas

**Sunni Mitchell**
**Donna Logan**
Assistant District Attorneys
Harris County, Texas

Oral Argument Not Requested

## Statement Regarding Oral Argument

The appellant requested oral argument, though he gave no particular reason why. The State believes the briefs in this case adequately apprise this Court of the issues and the law, and any marginal benefit from oral argument does not justify the considerable amount of time that preparation for oral argument requires of the parties and the Court. Therefore, the State does not request oral argument.

## Identification of the Parties

Counsel for the State:

>  Devon Anderson
>  —— District Attorney of Harris County
>
>  Sunni Mitchell & Donna Logan
>  — Assistant District Attorneys at trial
>
>  Clinton A. Morgan
>  —— Assistant District Attorney on appeal

Appellant:

>  Judist Lamond Broussard

Counsel for the Appellant:

>  Joseph Salhab
>  — Counsel at trial
>
>  Franklin Bynum
>  — Counsel on appeal

Judge on Original Application:

>  A.  Reagan Clark
>  —— Presiding judge

# Table of Contents

Statement Regarding Oral Argument ...................................................i

Identification of the Parties .......................................................... ii

Table of Contents ........................................................................ iii

Index of Authorities .......................................................................v

Statement of the Case ....................................................................1

Statement of Facts ........................................................................1

Summary of the Argument .................................................................2

Argument ....................................................................................3

    The trial court did not err in denying the appellant's motion to suppress his confession. The warrant affidavit contained a substantial basis to support the magistrate's finding of probable cause. Additionally, to whatever degree there was police "misconduct" here, it was so minor that it was not a factor in obtaining the appellant's confession...................................................................... 3

    I.    Factual Background: The appellant filed a motion to suppress his confession. After a hearing, the trial court denied it......................... 3

        A.    The Appellant's Motion ........................................................ 3

        B.    Cisneros's Testimony .......................................................... 5

        C.    The Warrant Affidavit.......................................................... 7

        D.    Arguments of the Parties and the Trial Court's Ruling .............. 8

    II.    Legal Background ................................................................ 10

        A.    A trial court's ruling on a motion to suppress is reviewed with deference, and will be affirmed under any applicable theory of law................................................................................... 10

        B.    On review, a magistrate's probable cause determination is entitled to deference. ................................................................ 10

        C.    If a statement is taken from a defendant arrested on an invalid warrant, the statement is still admissible if the statement is sufficiently attenuated................................................................ 11

III.   Argument ......................................................................... 13

   A.   Though it would have been better had Cisneros included additional information in the affidavit, the information in the affidavit was enough to give the magistrate a substantial basis for determining that probable cause existed. ........................... 13

   B.   Even if the affidavit did not establish probable cause, the appellant's confession was sufficiently attenuated from any violation of the law as to be admissible.................................... 16

     1.   *Miranda* Warnings.............................................................. 16

     2.   Temporal Proximity............................................................ 17

     3.   Intervening Circumstances ............................................... 18

     4.   Purpose and Flagrancy of Official Misconduct.......................... 18

     5.   Weighing the Factors.......................................................... 19

Conclusion ............................................................................. 21

Certificate of Compliance and Service........................................... 22

# Index of Authorities

**Cases**

*Bell v. State*
724 S.W.2d 780 (Tex. Crim. App. 1986) ......................................................... 17

*Castelan v. State*
54 S.W.3d 469 (Tex. App.—
Corpus Christi 2001, no pet.) .......................................................................... 20

*Farmah v. State*
883 S.W.2d 674 (Tex. Crim. App. 1994) ......................................................... 19

*Flores v. State*
319 S.W.3d 697 (Tex. Crim. App. 2010) ......................................................... 11

*Maixner v. State*
753 S.W.2d 151 (Tex. Crim. App. 1988) ......................................................... 16

*Martinez v. State*
348 S.W.3d 919 (Tex. Crim. App. 2011) ......................................................... 10

*Miller v. State*
736 S.W.2d 643 (Tex. Crim. App. 1987) ......................................................... 19

*Monge v. State*
276 S.W.3d 180 (Tex. App.—
Houston [14th Dist]. 2009), *aff'd*, 315 S.W.3d 35 (Tex. Crim. App.
2010) ................................................................................................................ 13

*Monge v. State*
315 S.W.3d 35 (Tex. Crim. App. 2010) .............................................. 12, 13, 18

*Porath v. State*
148 S.W.3d 402 (Tex. App.—
Houston [14th Dist.] 2004, no pet.) ................................................................ 10

*State v. Duarte*
389 S.W.3d 349 (Tex. Crim. App. 2012) ......................................................... 11

*State v. Steelman*
93 S.W.3d 102 (Tex. Crim. App. 2002) ........................................................... 10

*Valadez v. State*
   __ S.W.3d __, 04-14-00626-CR, 2015 WL 5439087 (Tex. App.—
   San Antonio Sept. 16, 2015, pet. filed) ............................................................. 11

*Ware v. State*
   724 S.W.2d 38 (Tex. Crim. App. 1986) ............................................................. 11

## Statement of the Case

The appellant was indicted for capital murder. (CR 15). The appellant pleaded not guilty, but a jury found him guilty as charged. (CR 115, 117). Because the State did not seek the death penalty, the trial court sentenced the appellant to confinement for life, without the possibility of parole. (CR 117). The trial court certified the appellant's right of appeal, and the appellant filed a timely notice of appeal. (CR 116, 120).

## Statement of Facts

In May 2008, Houston police began an investigation into a drug ring run by Juan Figueredo and Jonathan Siros. (5 RR 20-25). As part of this investigation, drug-possession charges were brought against Enrique Velasquez, a member of the ring. (5 RR 29). Shortly after his arrest, Velasquez agreed to become an informant. (5 RR 30-31). He was released from jail so that he could gather additional evidence for the police. (5 RR 32-33, 38-39).

Siros became suspicious about the circumstances of Velasquez's release. (5 RR 184-86). After police used information from Velasquez to obtain a search warrant for Siros's house, Siros told Figueredo that he

1

knew Velasquez was the informant. (5 RR 45-46, 49-50, 188-89). Siros asked Figueredo for $6,000 so that he could hire someone to kill Velasquez. (CR 192-95). Siros used the money to hire the appellant to kill Velasquez; the appellant used part of the money to hire Donald Strong to help him. (State's Ex. 47). In the early morning of November 19, the appellant drove Strong to Velasquez's house and the two of them laid in wait. (State's Ex. 47). When Velasquez came out of his house to go to work, Strong shot him, fatally. (State's Ex. 47; 6 RR 118-24). After being arrested by police, the appellant confessed to his involvement in the murder. (*See* State's Ex. 47).

## Summary of the Argument

In a single point of error, the appellant alleges that the trial court erred in not suppressing his confession, because, he argues, the confession was obtained as the result of an illegal arrest. Specifically, the appellant argues that, while police had an arrest warrant, the supporting affidavit did not contain probable cause.

The State believes that, giving due deference to the magistrate and trial court, there is sufficient information in the warrant to affirm the trial court's ruling. Alternatively, because the police had additional

2

information beyond what was in the affidavit, the police "misconduct" in this case was so minor — consisting of simply leaving out some information from an affidavit — that, combined with reading the appellant his *Miranda* rights and waiting until the next morning before taking his statement, any taint from the misconduct was attenuated by the time the appellant made his confession.

## Argument

**The trial court did not err in denying the appellant's motion to suppress his confession. The warrant affidavit contained a substantial basis to support the magistrate's finding of probable cause. Additionally, to whatever degree there was police "misconduct" here, it was so minor that it was not a factor in obtaining the appellant's confession.**

    I.    **Factual Background: The appellant filed a motion to suppress his confession. After a hearing, the trial court denied it.**

### A. The Appellant's Motion

Prior to trial, the appellant filed a motion to suppress any statements that he had made to the police. (CR 77-80). This motion alleged that the appellant's statements were "the result of coercion and the use of a two-step interrogation process on the part of law enforcement officers." (CR 77). The motion alleged "intimidation on the part of the police officer and agents of the State of Texas." (CR 77).

3

Moreover, the motion alleged, the statements were obtained in violation of the appellant's "right to remain silent and right to counsel as guaranteed by" seven constitutional and statutory provisions. (CR 77). Finally, the motion alleged that the statements "were not taken in accordance with the statutory requirements of Texas law pertaining to the admissibility of statements...." (CR 78). The motion asked for a pre-trial hearing. (CR 79).

The trial court held a hearing prior to the beginning of testimony. On the day of the hearing, the appellant filed an "Amended Motion to Suppress Defendant's Statements." (CR 96-100). Defense counsel advised the trial court that this amended motion contained "a minor addition," but was "[e]ssentially ... the one we filed previously." (5 RR 4). In addition to the allegations in the original motion, the amended motion alleged "[l]aw enforcement officers unlawfully detained [the appellant] without probable cause and without a valid arrest warrant," and thus the appellant's custodial statements were the result of an illegal arrest. (CR 97).

4

### B. Cisneros's Testimony

The only witness at the hearing was Houston Police Sergeant Eli Cisneros. Cisneros was the lead investigator into Velazquez's murder. (5 RR 4). Cisneros said that a couple of weeks after Velasquez's death he attended a debriefing of Figueredo by federal law enforcement officers. (5 RR 5-6). Figueredo told the officers that prior to Velazquez's death, Siros had come to suspect that Velazquez was an informant. (5 RR 32). Figueredo said that Siros had asked for $6,000 in order to have Velazquez killed, and Figueredo had lent him the money. (5 RR 36). Figueredo said that Siros originally approached someone named Lawrence Washington, aka "Wash," to do the killing, but he was unable to take the job. (5 RR 34). Figueredo said that after Wash turned down the job, Siros found someone named "Ju" to do it. (5 RR 34-35). Figueredo said that at later point, after Velazquez was dead, he asked Siros who had done the killing, and Siros told him that Ju had taken care of it. (5 RR 34).

Police eventually recovered a phone from Siros that had a number listed for "Ju." (5 RR 47). After Figueredo identified a picture of the appellant as "Ju," Cisneros obtained an arrest warrant for the appellant. (5 RR 47-48). The appellant was arrested on March 23, 2010, and

brought to the HPD homicide division for questioning around 9:40 pm. (5 RR 10-11).

Upon arrival, the appellant looked to be "awake, alert, and oriented," and "physically fine." (5 RR 11-12). Cisneros read him the required statutory warnings, and the appellant agreed to speak with Cisneros. (5 RR 13-14). The appellant requested a polygraph examination; because a polygrapher could not be located at such a late hour, the interview was terminated. (5 RR 14-15). Cisneros took the appellant to the HPD jail to wait overnight. (5 RR 15).

The next morning, Cisneros picked up the appellant at around 9:30 am. (5 RR 15-16). The appellant seemed physically and mentally fine. (5 RR 16). Cisneros took the appellant to an interview room at the homicide division, and another officer began making arrangements for a polygraph examination. (5 RR 16).

Cisneros went into the interview room and asked the appellant again if he was sure he wanted to take a polygraph. (5 RR 18). The appellant said that he did, but then he started asking Cisneros about the sorts of questions he would be asked: "Are they going to ask if I'm the one who actually did the killing[?]" (5 RR 18). Cisneros told the appellant that he would be asked "multiple questions about the case

6

itself." (5 RR 18). The appellant decided he did not wish to take a polygraph, but instead wished to speak to Cisneros. (5 RR 19). Cisneros turned on the video recorder, and the appellant proceeded to confess to his role in the murder. (5 RR 20-22; State's Ex. 47).

## C. The Warrant Affidavit

Cisneros's warrant affidavit does not contain as much detail as did his testimony at the hearing on the motion to suppress. The affidavit contains three substantive paragraphs. (*See* State's Ex. 68). In the first paragraph, Cisneros introduces himself and ~~the~~ describes the facts of Velazquez's murder. Cisneros states that he had come to learn that Velazquez was a confidential informant for the Houston Police Department. Cisneros then states that Velazquez had worked for a narcotics organization headed by Figueredo, and that Figueredo, then in federal custody, had told Cisneros that he had information regarding Velazquez's death.

In the second paragraph, Ciscneros states that "on a date prior to Thanksgiving in November 2009," Siros told Figueredo that Velazquez was the reason Siros had been arrested, and Siros wanted $6,000 in order to "take care of it." Figueredo understood "take care of it," to mean

7

killing Velazquez. Figueredo lent Siros the money. Siros originally told Figueredo that he was going to get someone named "Washington" to commit the murder; in a later conversation, Siros told Figueredo that Washington "was unable to do it," so Siros "had asked 'Ju' to do it."

In the third paragraph, Cisneros describes his efforts to identify "Ju." He states that federal authorities had obtained a cell phone belonging to Siros, and the phone had a number listed for "Jew." Cisneros showed a photograph of the appellant to Figueredo, who identified it as a picture of "Ju."

### D. Arguments of the Parties and the Trial Court's Ruling

After hearing Cisneros's testimony, and admitting into evidence the affidavit and the video of the appellant's confession, the trial court heard arguments from the parties. The State argued that the affidavit contained probable cause to justify the arrest, and that the appellant's subsequent statement was made voluntarily after he knowingly and intelligently waived his statutory rights. (5 RR 53-54).

Defense counsel replied by arguing that the affidavit did not state probable cause. Specifically, defense counsel pointed out that, while the affidavit stated that Siros had asked the appellant to kill Velazquez, it did

8

not state that the appellant agreed to or actually did kill Velazquez. (5 RR 55-56). Defense counsel argued that the lack of probable cause in the affidavit meant that the appellant's arrest was illegal, and, "under the well[-]known fruit of the poisonous tree doctrine that would render the taking of the statement a fruit of that poisonous tree…." (5 RR 57).

The State replied that the evidence in the warrant was sufficient to establish probable cause. The State pointed out that the warrant established: 1) Velazquez had been murdered; 2) Siros asked for money to have Velazquez killed; 3) Siros had contact information for the appellant; 4) After Washington backed out the deal, Siros asked the appellant. (5 RR 58).

The trial court found "there to be probable cause for the arrest of the [appellant]." (5 RR 58). The trial court further found that the appellant's statement was made voluntarily, after ~~have~~ he had been properly advised of his rights. (5 RR 59). Accordingly, the trial court denied the motion. (5 RR 59).

9

## II. Legal Background

### A. A trial court's ruling on a motion to suppress is reviewed with deference, and will be affirmed under any applicable theory of law.

A motion to suppress is, in effect, a specialized objection to the admissibility of evidence. *Porath v. State*, 148 S.W.3d 402, 413 (Tex. App.—Houston [14th Dist.] 2004, no pet.). Like all evidentiary rulings a trial court's ruling on a motion to suppress is reviewed for an abuse of discretion. *Martinez v. State*, 348 S.W.3d 919, 922 (Tex. Crim. App. 2011). Reversal is appropriate only if the trial court's ruling is outside the zone of reasonable disagreement. *Ibid*.

A trial court's ruling on a motion to suppress must be upheld if it is reasonably supported by the record, and if it is correct under any legal theory applicable to the case. *State v. Steelman*, 93 S.W.3d 102, 107 (Tex. Crim. App. 2002).

### B. On review, a magistrate's probable cause determination is entitled to deference.

In order to issue an arrest warrant, a magistrate must be presented with an affidavit containing sufficient facts to support an independent determination that probable cause exists to believe that the accused has committed a crime. *Valadez v. State*, ___ S.W.3d ___, 04-

14-00626-CR, 2015 WL 5439087, at *3 (Tex. App.—San Antonio Sept. 16, 2015, pet. filed). On appeal, the relevant inquiry is not whether probable cause existed, but, rather, whether there was a substantial basis to determine that probable cause existed. *State v. Duarte*, 389 S.W.3d 349, 354 (Tex. Crim. App. 2012).

The standard of "probable cause" is the same degree of proof in the case of both search and arrest warrants: considering the totality of the circumstances, is there a "fair probability" that the accused committed the offense (for an arrest warrant) or that contraband or evidence of a crime will be found at the specified location (search warrant). *Ware v. State*, 724 S.W.2d 38, 40 (Tex. Crim. App. 1986). An affidavit for an arrest warrant need not establish that, more likely than not, the accused committed the offense; rather, it only must show a "substantial chance" that he did. *See Flores v. State*, 319 S.W.3d 697, 702 (Tex. Crim. App. 2010).

### C. If a statement is taken from a defendant arrested on an invalid warrant, the statement is still admissible if the statement is sufficiently attenuated

The legality of arrest warrants is typically litigated in a context exactly like this one: A suspect is arrested on a warrant, the suspect

11

makes a custodial statement after the arrest, and then, at trial, the defense claims that the statement should be excluded because it was obtained in violation of the law. While there is a certain logic and attractiveness to this argument, whether such a defendant's statement was obtained "in violation" of the law is not, when analyzed, as straightforward as situations where evidence obtained from an illegal search are declared to have been obtained "in violation" of the law. Through what has become known as the attenuation doctrine, courts have recognized that even if a suspect's original arrest was illegal, a sufficient amount of time and intervening events between the arrest and the custodial statement could produce a conclusion that the statement was not obtained as a result of the illegal arrest. *See e.g., Monge v. State*, 315 S.W.3d 35, 40 (Tex. Crim. App. 2010). This is one reason why there are so few reported cases that discuss probable cause in the context of an arrest warrant.

An attenuation analysis looks at four factors: 1) whether *Miranda* warnings were given; 2) the temporal proximity of the arrest to the confession; 3) the presence of intervening circumstances; and 4) the purpose and flagrancy of the official misconduct. *Ibid*. (quoting *Monge v. State*, 276 S.W.3d 180, 184-85 (Tex. App.—Houston [14th Dist]. 2009),

12

*aff'd*, 315 S.W.3d 35 (Tex. Crim. App. 2010)). No single factor in this analysis is decisive; rather, reviewing courts consider the effect of the factors as a whole. *Monge*, 315 S.W.3d at 40. Generally, if a defendant has been read his *Miranda* rights, if a few hours passed between the arrest and statement, if there was an independent intervening circumstance that caused the defendant to give a statement (like a co-defendant's confession), and if the "official misconduct" was unintentional or minor, the defendant's statement will be considered to be sufficiently attenuated from the illegal arrest so as to allow its admission into evidence. *See id.* at 40-42.

### III. Argument

    **A. Though it would have been better had Cisneros included additional information in the affidavit, the information in the affidavit was enough to give the magistrate a substantial basis for determining that probable cause existed.**

In his brief, the appellant cogently points out that the affidavit does not explicitly state that he killed or agreed to kill Velazquez. (Appellant's Brief at 11-12). The State agrees that the affidavit would have been better had it included the fact that Figueredo told Cisneros that the appellant had participated in the killing, but the sufficiency of

an affidavit is determined by looking at the information it contains, not the information that is missing.

Giving deference to the magistrate's implicit determinations that Cisneros and Figueredo were credible, the affidavit establishes that

1. Figueredo ran a drug organization;

2. Figueredo knew that Siros was in federal custody, and that Siros believed Velazquez had given authorities the information that led to his arrest;

3. In early-to-mid November, Siros had asked Figueredo for $6000 so that Siros could pay someone to kill Velazquez, and Figueredo gave him the money;

4. Siros actively sought out people to kill Velazquez, first asking someone named "Washington" to do it, and then, after Washington declined, asking "Ju";

5. The appellant is Ju;

6. Siros had the appellant's contact information;

7. Velazquez was killed on November 19 by a single shot to the chest;

8. Velazquez actually was an informant who gave the police information on a drug organization run by Figueredo;

While certainly not enough to support a conviction, this information provided a substantial basis for concluding that the appellant had some level of party responsibility for Velazquez's murder. In claiming the contrary in his brief, the appellant asks his reader to kill

14

Donald Trump for $6,000, and then asks whether the mere fact of that request would be sufficient to support an arrest warrant for his reader. (Appellant's Brief at 12). The State believes the deficiencies in the appellant's cutesy example help illustrate how much information Cisneros's affidavit contained. In order for the appellant's example to be analogous, his brief would have had to advised also that: 1) Donald Trump was dead; 2) the death was a murder; 3) the appellant was legitimately interested in paying for Trump's murder, rather than merely using a hypothetical to express distaste; 4) the appellant had borrowed $6,000 explicitly for the purpose of facilitating Trump's; 5) the appellant was so interested in Trump's murder that even after one individual refused to do it he contacted someone else; 6) the appellant had his reader's contact information in his cell phone; and 7) Trump's murder occurred in the same general time frame as when the appellant contacted his reader about the murder.

The emphasis in reviewing an arrest warrant on appeal is not whether the facts in the affidavit established that the suspect was guilty, but whether they establish a "fair probability" or a "substantial basis" for believing that the suspect had some criminal responsibility for the alleged offense. The State believes the affidavit in this case satisfied that

test, and thus the trial court did not abuse its discretion in denying the appellant's motion to suppress.

**B. Even if the affidavit did not establish probable cause, the appellant's confession was sufficiently attenuated from any violation of the law as to be admissible.**

While the issue of probable cause is something of a close call in this case, what is not close is the attenuation analysis. Looking at the four attenuation factors, the appellant's statement was admissible.

**1. *Miranda* Warnings**

The appellant was read his *Miranda* warnings at least twice, once when he was taken to the police station immediately after his arrest, and again the next morning prior to making his recorded statement. (5 RR 12-13; State's Ex. 47). Though this factor is not determinative, it does weigh in favor of admissibility. *Maixner v. State*, 753 S.W.2d 151, 156 (Tex. Crim. App. 1988) (where defendant was advised of rights "several times," this factor was "important factor" supporting conclusion that statement was obtained as a result of illegal arrest).

## 2. Temporal Proximity

Something like 12 hours passed between when the appellant was first brought to the police station and when he made his confession. Courts recognize that temporal proximity is a somewhat ambiguous factor in the attenuation analysis: If the time between an illegal arrest and confession is very short, that supports a conclusion that the confession was the result of the illegal arrest; however, if a detention drags on for a very long period of time, such as several days, that might also support an inference that the confession was the result of the illegal detention. *See Bell v. State*, 724 S.W.2d 780, 789 n.4 (Tex. Crim. App. 1986) (collecting cases holding that intervals of one and two hours hours and "two or three days" weighed in favor of inadmissibility, but delays of three, five, twenty-four, twenty-nine, and forty-eight hours weighed in favor of admissibility).

The State believes the temporal proximity in this case weighs in favor of admissibility, though this is the weakest of the four factors. The appellant was under arrest for long enough to clear his mind of the arrest itself, but not so long as to constitute the sort of lengthy illegal detention that might prompt a false confession. He was arrested, allowed to sleep through the night while police tried to prepare him for

17

a polygraph examination, and then he gave his statement early the next morning.[1]

### 3.  Intervening Circumstances

Prior to the appellant's statement, Cisneros showed the appellant pictures of several people connected to this murder. (State's Ex. 47). Courts have held that if an illegally-arrested defendant confesses after being confronted with "significant evidence" of his guilt, that breaks the chain of causation from the illegal arrest and weighs in favor of admissibility. *Monge*, 315 S.W.3d at 41. The State would not characterize the information with which Cisneros confronted the appellant as "significant," but neither was it non-existent.

### 4.  Purpose and Flagrancy of Official Misconduct

The State believes that in this case, the fourth factor is far and away the most important. The "misconduct" in this case was so minor as to bring into question whether that is even the appropriate word. Had the prosecutor who helped Cisneros draft his affidavit simply included

---

[1] The appellant refers to the delay in setting up a polygraph as police "drag[ging] their feet." (Appellant's Brief at 13). If the appellant is accusing the police of bad faith, that has no basis in the record. Considering that a polygraph examination requires special equipment, a trained polygrapher, and preparations in order to prepare questions, the State suggests that, as police had no prior notice that the appellant wished to take a polygraph, the inability to give a spur-of-the-moment polygraph exam at 10:00 pm was understandable.

the fact that Figueredo had told Cisneros that the appellant had followed through in killing Velazquez, the affidavit would have, unquestionably, been sufficient. Thus any "misconduct" in this case was not in making an arrest unsupported by probable cause, it was in failing to include an additional piece of information in an affidavit.[2] *See Miller v. State*, 736 S.W.2d 643, 650 (Tex. Crim. App. 1987) (where police arrested suspect based on facially valid arrest warrant, but affidavit supporting warrant was later found to lack probable cause, arresting officers' actions "cannot be classified as misconduct," and complained-of evidence was attenuated from any illegality); *compare Farmah v. State*, 883 S.W.2d 674, 679 (Tex. Crim. App. 1994) (where police make arrest without probable cause, misconduct weighs "strongly" in favor of excluding statement obtained after arrest).

### 5. Weighing the Factors

The first and second factors weigh in favor of finding attenuation, the third factor is somewhat ambiguous or perhaps weights against

---

[2] In his brief, on the page before he accuses the police of "drag[ging] their feet" in taking the appellant's statement, the appellant accuses the police of "simply act[ing] too quickly here" by procuring the warrant before they had probable cause. (Appellant's Brief at 12). However, Cisneros's testimony at the motion-to-suppress hearing was that he obtained the full story from Figueredo, including the fact that the appellant had followed through on the murder, in a single debriefing prior to getting the warrant. (*See* 5 RR 34-35).

attenuation, and the fourth factor weighs strongly in favor of attenuation. The most on-point case for this combination of factors is *Castelan v. State*, 54 S.W.3d 469 (Tex. App.—Corpus Christi 2001, no pet.). In that case, police arrested Castelan based on a warrant. Though police had probable cause to support a warrant, the warrant that issued was invalid because of a typographical error. After his arrest in the late afternoon, Castelan remained in custody overnight. The next morning police advised Castelan of the *Miranda* warnings, after which he gave a statement to police. There were no intervening circumstances. On appeal, because the degree of "misconduct" in that case was so minor, the strength of the first two attenuation factors was enough to attenuate the illegal arrest, thus the statement was admissible. *Castelan*, 54 S.W.3d at 478-79.

A similar analysis in this case would produce a similar result: Because 1) the appellant was read the *Miranda* warnings, 2) roughly twelve hours passed between the arrest and statement, and 3) any police "misconduct" consisted only of leaving a detail out of an affidavit, any illegality in this case is sufficiently attenuated from the appellant's statement as to render the statement admissible. Accordingly, the trial court did not abuse its discretion in denying the motion to suppress.

## Conclusion

The State respectfully submits that all things are regular and the judgment of the trial court should be affirmed.

**DEVON ANDERSON**
District Attorney
Harris County, Texas

/s/ C.A. Morgan
**CLINTON A. MORGAN**
Assistant District Attorney
Harris County, Texas
1201 Franklin, Suite 600
Houston, Texas  77002
713.755.5826
Texas Bar No. 24071454

## Certificate of Compliance and Service

I certify that, according to Microsoft Word's word counting function, the portion of this brief for which Rule of Appellate Procedure 9.4(i)(1) requires a word count contains 4,055 words.

I also certify that I have requested that efile.txcourts.gov electronically serve a copy of this brief to:

Franklin Bynum
fgb@lawfgb.com

/s/ C.A. Morgan
**CLINTON A. MORGAN**
Assistant District Attorney
Harris County, Texas
1201 Franklin, Suite 600
Houston, Texas 77002-1923
(713) 274-5826
Texas Bar No. 24071454

Date: October 30, 2015