

**IN THE COURT OF CRIMINAL APPEALS
OF TEXAS**

**NO. PD-1215-19**

**JESSE ADRIAN MARTINEZ, Appellant**

**v.**

**THE STATE OF TEXAS**

**ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW
FROM THE EIGHTH COURT OF APPEALS
EL PASO COUNTY**

KEEL, J., delivered the opinion of the Court in which HERVEY, RICHARDSON, NEWELL, WALKER, SLAUGHTER, and MCCLURE, JJ., joined. YEARY, J., concurred. KELLER, P.J., dissented.

## O P I N I O N

After the trial court denied his motion to suppress his confession, Appellant pled guilty to murder and was sentenced to 30 years in prison. On appeal he challenged the suppression ruling, claiming that his confession was the product of his illegal arrest. The court of appeals held that the taint was sufficiently attenuated under *Brown v. Illinois*, 422 U.S. 590 (1975), and affirmed the trial court. *Martinez v. State*, 589 S.W.3d 869

(Tex. App.— El Paso 2019).

We granted review to determine whether the court of appeals misapplied the four-factor test from *Brown* and whether the court of appeals' finding of probable cause was based on opinions rather than facts in conflict with *Torres v. State*, 182 S.W.3d 899, 902 (Tex. Crim. App. 2005). We conclude that the court of appeals misapplied the third and fourth *Brown* factors and erred in looking to Appellant's statement to establish probable cause for his arrest. We reverse the judgment of the court of appeals and remand the case to the trial court.

## I. Background

Appellant was 19 years old, had no prior arrests, and had never before been questioned by the police. On April 16, 2016, police officers arrived at his mother's house after midnight without a warrant for the purpose of questioning him about the disappearance of his friend, Tristan Mina. They took him to the police station in an unmarked car. His mother followed in her own car and waited in the family area when they took him to an interrogation room. She told him that she would get him an attorney.

Appellant waited in the interrogation room alone for several minutes before two detectives, Michael Lara and Rex Parsons, joined him there. Detective Lara read Appellant his *Miranda* rights. Appellant invoked his right to counsel, and the interview was terminated. The detectives told Appellant that he was under arrest for murder and locked him in a holding cell where he was handcuffed to a bench. Less than fifteen minutes later Appellant "flagged down" Lara and said he would give a statement.

Appellant was returned to the interrogation room and was again read his *Miranda* rights. He said he understood the rights and wished to continue. He then gave an hour-long videotaped statement recounting the events of the night that Mina was killed.

Appellant said that he and his drinking buddies, Jose "Joe" Andrade and Samuel Rico, went to Mina's house to buy cocaine. Mina summoned a supplier and made the transaction. Mina and the others used the cocaine and then wanted more, and Mina again summoned the dealer. While Mina was in the supplier's car the second time, Appellant, Andrade, and Rico conspired to rob him.

When Mina returned to Rico's car, they drove down the street to a church. While Mina and Andrade were outside the car smoking, Appellant expressed reluctance about their plan but heard a thud, got out of the car, and saw Mina on the ground, badly injured. Appellant got back in the car and heard Andrade and Rico put Mina into the trunk. They stopped at Abner Robles's house where Appellant changed his shirt and shoes, and then Andrade and Rico took Appellant home.

A day or two later, Appellant, Robles, and Rico washed Rico's car. Sometime after that Appellant went with Robles and Andrade to "the wall" where Andrade burned some things that looked like clothes. Appellant did not know what became of Mina but had the impression that Andrade and Rico disposed of him in the desert.

## II. Suppression Hearing

Lara, Parsons, and Appellant testified in the two-day suppression hearing.

Lara testified that he believed he had probable cause to arrest Appellant based on

Rico's statement. Lara did not detail Rico's statement but said that it implicated Appellant "in almost the same fashion" as Appellant's post-arrest statement did. Lara said that when he arrested Appellant the investigation into Mina's disappearance was ongoing and that he could have obtained a warrant to arrest Appellant but had not yet done so. Lara testified that Appellant was surprised when he was charged with murder.

Parsons testified that he believed that they had probable cause to arrest Appellant because of what witnesses and a co-defendant had told them. He did not specify what the witnesses or co-defendant had said.

Appellant testified that he was terrified when he was arrested and did not know what was going on. He flagged down Lara to "get the situation handled" because he was scared that he was being charged with murder when he did not kill anyone. He understood his rights and wanted a lawyer; and he thought his lawyer was coming when he gave the statement because he asked Lara and Parsons to talk to his mom about getting his lawyer when he invoked his right to counsel in the first interview.

The trial court concluded that Appellant's statement was voluntary and denied the motion to suppress.

## III. Court of Appeals

On appeal the State conceded that Appellant was arrested without a warrant and without authorization under Chapter 14 of the Code of Criminal Procedure. The court of appeals analyzed the four factors from *Brown v. Illinois* to decide whether Appellant's confession was sufficiently attenuated from his illegal arrest: 1) the giving of *Miranda*

warnings, 2) the temporal proximity of the arrest and the confession, 3) the presence of intervening circumstances, and 4) the flagrancy of the official misconduct. *Martinez*, 589 S.W.3d. at 883 (citing *Brown*, 422 U.S. at 603-04).

The first factor weighed in the State's favor because *Miranda* warnings were given at the beginning of Appellant's videotaped interviews. *Martinez*, 589 S.W.3d. at 884.

The second factor weighed in Appellant's favor because a short time elapsed between the illegal arrest and the confession. *Id.*

The third factor weighed heavily in the State's favor because "Martinez's re-initiation of communication with Detective Lara was an intervening circumstance borne of his own free will." *Id.* at 885 (citing *Crutsinger v. State*, 206 S.W.3d 607 (Tex. Crim. App. 2006) and *Bell v. State*, 724 S.W.2d 780 (Tex. Crim. App. 1986)).

As for the fourth factor, the flagrancy of official misconduct, the court of appeals examined it under a "lesser level of scrutiny" on grounds that the warrantless arrest only violated Texas statutory law but not constitutional law. *Martinez*, 589 S.W.3d at 888; TEX. CODE CRIM. PROC. Arts. 14.01-14.04. The court of appeals found probable cause for the arrest in Lara's testimony that Rico's statement corroborated the one eventually obtained from Appellant. Because Rico's statement "mirrored the one eventually made by Martinez," the court of appeals looked to the contents of Appellant's statement to determine what facts the detectives possessed when they arrested him. *Martinez*, 589 S.W.3d at 886. Based on the absence of flagrant misconduct and the statutory-only violation of Appellant's rights, the court of appeals weighed the fourth *Brown* factor in

favor of the State. *Martinez*, 589 S.W.3d at 889.

The court of appeals held that the State met its burden of proving that the evidence obtained from Appellant's statement was sufficiently attenuated from the unlawful arrest. *Id.*

## IV. Standard of Review

Under the standard of review for Fourth Amendment claims we give almost total deference to the trial court's express or implied determination of historical facts that are supported by the record and review *de novo* the court's application of the law to those facts. *State v. Ford*, 537 S.W.3d 19, 23 (Tex. Crim. App. 2017); *State v. Ross*, 32 S.W.3d 853, 856 (Tex. Crim. App. 2000). The trial court is the sole trier of fact and judge of the credibility and demeanor of the witnesses. *Ross*, 32 S.W.3d at 856. Whether the facts, as determined by the trial court, add up to probable cause is a question we review *de novo*. *Ford*, 537 S.W.3d at 23.

The burden is on the State to establish the reasonableness of a warrantless arrest. *Torres*, 182 S.W.3d at 902. Probable cause must be based on facts and circumstances within the officer's personal knowledge or conveyed to the officer by reasonably trustworthy sources. *Id.* It may not be based on opinions. *Id.* Courts consider the totality of the circumstances to determine whether probable cause exists to justify a warrantless arrest. *Id.* Probable cause to arrest is not shown if officers do not articulate facts supporting their opinions. *Id.* at 903. Nor is probable cause supported by hindsight. "In reviewing a warrantless arrest to determine the existence of probable cause, we look

to the facts known to the officers at the time of the arrest; subsequently discovered facts or later-acquired knowledge, like the fruits of a search, cannot retrospectively serve to bolster probable cause at the time of the arrest." *Amores v. State*, 816 S.W.2d 407, 415 (Tex. Crim. App. 1991).

## V. *Brown v. Illinois*

A confession may be voluntary for Fifth Amendment purposes in that *Miranda* warnings were given and understood, but that is not sufficient to purge the taint of an illegal arrest. *Taylor v. Alabama*, 457 U.S. 687, 690 (1982). *Brown* "carefully differentiated between the *Miranda* warnings, which are a procedural safeguard employed to protect Fifth Amendment rights against the compulsion inherent in custodial surroundings, and the exclusionary rule as utilized to effectuate the interests of the Fourth Amendment." *Bell*, 724 S.W.2d at 788 (citing *Brown*, 422 U.S. at 602).

Even when a statement is found to be voluntary under the Fifth Amendment, its admissibility under the Fourth Amendment must still be considered. *Brown*, 422 U.S. at 601-02. *Miranda* warnings alone cannot break the causal connection between the illegal arrest and the confession and cannot always assure that the illegal arrest in violation of the Fourth Amendment has not been exploited. *Id.* at 603. The *Brown* factors ensure that the "State cannot cure Fourth Amendment violations simply by administering the Fifth Amendment warnings required by *Miranda*." *Bell*, 724 S.W.2d at 787. Voluntariness is a threshold requirement, and *Miranda* warnings are an important factor in assessing the causal connection between an illegal arrest and a confession, but courts must also

consider the temporal proximity of the arrest and the confession, any intervening circumstances, and the flagrancy of the official misconduct. *Brown*, 422 U.S. at 603-04.

If the time between an illegal arrest and a confession is short, it allows little time for attenuation of taint and indicates that there may be a causal connection between the illegal arrest and the confession. The taint of the illegal arrest is more likely to be attenuated if the suspect has had time to rest, reflect, and eat; and time to consider options and exercise free will. *See Taylor*, 457 U.S. at 691; *Bell*, 724 S.W.2d at 791.

Intervening events must break the causal connection between the illegal arrest and the confession so that the confession is "sufficiently an act of free will to purge the primary taint." *Taylor*, 457 U.S. at 690 (quoting *Brown*, 422 U.S. at 602). Examples of significant intervening circumstances include the opportunity to meet with family; the issuance of an arrest warrant based on information other than fruit of the illegal arrest; confronting the suspect with evidence untainted by the illegal arrest; and releasing the suspect from custody and informing him that he is free to leave. *Monge v. State*, 315 S.W.3d 35, 41 (Tex. Crim. App. 2010); *Maixner v. State*, 753 S.W.2d 151, 156 (Tex. Crim. App. 1988); *Bell*, 724 S.W.2d at 791. A suspect's request to speak to the police may be an intervening circumstance if the request is a product of the suspect's own free will. *Crutsinger*, 206 S.W.3d at 611.

The purpose and flagrancy of the official misconduct is one of the most important factors. *Self v. State*, 709 S.W.2d 662, 668 (Tex. Crim. App. 1986); *Bell*, 724 S.W.2d at 789. Constitutional violations are judged more harshly than statutory violations. *See*

*Duncan v. State*, 639 S.W.2d 314, 318 (Tex. Crim. App. 1982). The failure to get a warrant before making an arrest is official misconduct. *Monge*, 315 S.W.3d at 42. But when probable cause exists, failure to get a warrant is comparatively less serious misconduct than if the accused is arrested with no apparent justification with the sole intent to exploit the arrest to extract a confession. *Id.* Flagrantly abusive police misconduct requires the State to prove clear indications of attenuation. *Id.*

Police conduct is the most flagrantly abusive when the arrest relies on factors so lacking in indicia of probable cause as to render belief in its existence entirely unreasonable; or when the arrest is effectuated as a pretext for collateral objectives, unnecessarily intrudes on personal privacy, is made without any apparent justification, or is exploited for the purpose of obtaining a confession. *Bell*, 724 S.W.2d at 789-90. An arrest without probable cause that is investigatory or was designed to cause fright, surprise, and confusion is flagrant police misconduct. *Brown*, 422 U.S. at 605. But even if the police misconduct does not shock the conscience, an otherwise inadmissible confession should not be made admissible simply because the police misconduct was not too reprehensible. *Bell*, 724 S.W.2d at 790.

The traits of the accused and the circumstances and details surrounding the questioning and arrest are relevant to the inquiry. Picking up a suspect from home in the middle of the night may be considered more flagrant if no reason or need for doing so is shown.

For example, in *Green v. State*, police misconduct was flagrant because they

arrested 18-year-old Green at gunpoint at his home in the middle of the night without probable cause and then drove him around for an hour to investigate the offense before taking him to the station. 615 S.W.2d 700, 707 (Tex. Crim. App. 1980) (en banc) (op. on reh'g). Similarly, police misconduct was flagrantly abusive in *Duncan v. State* where they arrested Duncan at home at 3:00 a.m. without a warrant for the express purpose of interrogating her and subjected her to nearly continuous interrogation for over three hours until she signed a written confession. 639 S.W.2d at 318.

By contrast, police misconduct was not abusive in *Monge* because Monge was at the police station all day voluntarily, had eaten lunch, taken smoke breaks, agreed to a polygraph exam, provided a DNA sample, and given consent to search his home and car. Although he was free to leave, he stayed and slept in the interview room; and he was arrested without a warrant the next morning and confessed after being confronted with his accomplice's statement that was untainted by the illegal arrest. *Monge*, 315 S.W.3d at 39, 42. *See also Dowthitt v. State*, 931 S.W.2d 244, 261-62 (Tex. Crim. App. 1996) (police conduct not abusive because statement began as non-custodial, Dowthitt was released and told he was free to leave, he returned to the police station on his own and was not arrested until after he admitted that he was involved in a murder); *Maixner*, 753 S.W.2d at 157 (police conduct was not flagrant because Maixner was released from custody and free to leave after police learned they mistakenly violated state law in arresting him; he chose to remain at the station and give a statement); *Self*, 709 S.W.2d at 667-68 (warrantless arrest in violation of state law should not be condoned but police

conduct was not purposeful or flagrant).

## VI. Analysis

The court of appeals correctly assessed the first two *Brown* factors. Appellant was advised of his *Miranda* rights, which favors attenuation, but the time between the illegal arrest and the confession was short, which disfavors attenuation. *Martinez*, 589 S.W.3d at 884. But we disagree with the court of appeals about the third and fourth factors because the intervening circumstance that it cited—Appellant's flagging down Lara after his arrest—was produced by an arrest that, on this record, was unsupported by probable cause and was surrounded by circumstances suggesting flagrantly abusive police misconduct.

In finding probable cause, the court of appeals relied on Lara's testimony that Appellant's confession implicated him in "almost the same fashion" as Rico's had. In effect, the court of appeals used Appellant's confession given after his illegal arrest to supply probable cause. This was a mistake because facts discovered after an arrest cannot be used in hindsight to supply probable cause. *Amores*, 816 S.W.2d at 415. The State argues that probable cause could be inferred from Lara's testimony about the similarity between Rico's and Appellant's statements, but the inference would depend on speculation. Lara did not specify what Rico said or what "almost the same fashion" really meant. "We will not engage in conjecture as to the existence of facts which are critical to a finding of probable cause and which the State bore the burden of proving." *Id.* Instead, those facts "must be specifically articulated" in the record. *Id.* In this case

they were not, so the record does not support a probable cause finding.

But even if Lara did have probable cause at the time of the arrest, and the prosecution just failed to prove it in the suppression hearing, the surrounding circumstances show that the police misconduct was flagrantly abusive. When Appellant invoked his right to counsel, Lara and Parsons announced that he was under arrest for murder, handcuffed him, confined him to a holding cell, and chained him to a bench. There was no evidence that Appellant was a flight risk, that there was no time to get an arrest warrant, or that some other urgency justified the warrantless arrest. No justification was offered for the different treatment pre-*Miranda*—leaving Appellant alone in the interrogation room—and post-*Miranda*—immediate arrest and confinement. Instead, the arrest and its surrounding, middle-of-the night circumstances seemed designed to cause fear, surprise, and confusion for the purpose of getting a confession.

Citing *Crutsinger*, the court of appeals and the State say Appellant's act of reinitiating contact with Lara was an intervening circumstance that broke the causal connection between the illegal arrest and the confession. But *Crutsinger* is distinguishable. Crutsinger was arrested at a bar for failing to identify himself after using a credit card that had been flagged as stolen. *Crutsinger*, 206 S.W.3d at 609. A few minutes after he was placed in a holding cell, he asked to speak to an officer and said he had "messed up." *Id.* He then waived his rights, consented to a search of his belongings, gave a DNA sample, and confessed to murdering two women. *Id.* Although Crutsinger's warrantless arrest was unlawful, it was not effectuated in a manner that would cause

shock, confusion, and fear; he was not taken from home in the middle of the night for the sole purpose of questioning in an ongoing investigation, he had not invoked his right to counsel, and he was not illegally arrested for murder. Crutsinger's initiation of contact with the officer was determined to be of his own free will. *Id.* at 611. Considering the circumstances of this case, including the manner of the arrest and the characteristics of the accused, we cannot conclude that Appellant flagging down Lara was an independent act of free will sufficient to purge the primary taint of the illegal arrest.

Three of the four *Brown* factors weigh in Appellant's favor. Like Brown's statement, Appellant's was separated from his illegal arrest by very little time and there was no intervening circumstance. The arrest had a quality of purposefulness; it was for investigation, embarked upon in the hopes that something might turn up, and the arrest seems to have been calculated to cause surprise, fright, and confusion. *Brown*, 422 U.S. at 605. Appellant's statement was the fruit of his illegal arrest, and nothing broke the causal connection between the illegal arrest and the statement. The statement should have been suppressed. "When there is a close causal connection between the illegal seizure and the confession, not only is exclusion of the evidence more likely to deter similar police misconduct in the future, but use of the evidence is more likely to compromise the integrity of the courts." *Dunaway v. New York*, 442 U.S. 200, 218 (1979).

## VII. Preservation

The State argues that Appellant did not preserve the claim that his statement was

the fruit of an unlawful arrest and that only the voluntariness of the confession was considered at the suppression hearing. The State says defense counsel argued only about Appellant invoking his right to counsel. The record establishes otherwise. Defense counsel argued that the arrest was without a warrant and without probable cause. At the end of the suppression hearing when the judge discussed the arrest, defense counsel asked, "Why did they arrest him at that point, Judge? . . .What probable cause did they have at that point? That was not articulated, Judge. There should have been a warrant taken out and the Court knows that." Thus, Appellant's illegal arrest claim was raised at the suppression hearing and ruled on by the trial court.

The State argues that we granted review to consider only the fourth *Brown* factor and should not consider the other three factors in our analysis. This is incorrect. We granted review to consider whether the court of appeals misapplied the four-factor test in *Brown*, and the *Brown* factors are somewhat intertwined and must be considered together.

The State also claims that Appellant did not argue in the court of appeals that Rico's statement could not support probable cause because its contents were not proven at the suppression hearing. But Appellant's argument is properly before us because the argument flows from the court of appeals' analysis of the Fourth *Brown* factor and its use of Appellant's statement to surmise what was in Rico's statement. Also, contrary to the State's claim that this argument was not raised in the trial court, defense counsel raised this issue at the suppression hearing, asking Lara about his belief that he had probable cause to arrest Appellant: "all you had was a statement of Mr. Rico, which we don't have

in front of us?" to which Lara replied, "Correct."

## VIII.  Conclusion

The court of appeals erred in its analysis of the third and fourth *Brown* factors and in looking to Appellant's statement for probable cause.  We reverse the judgment of the court of appeals and remand to the trial court for further proceedings not inconsistent with this opinion.

Delivered: April 14, 2021

Publish